v. Penny Pritzker, et cetera, et al. Good morning, Your Honors. Stephen Ouellette for Appellant Frontier Fishing. This is obviously an appeal from an administrative proceeding before the National Oceanographic and Atmospheric Administration involving an alleged violation of a closed area, or a restricted fishing area, in October of 1997. Frontier Fishing contends now, as it always has, that on that particular evening its vessel set out adjacent to what we call Restricted Gear Area 1, and towed in a southerly direction until she encountered the Coast Guard Cutter Spencer at about 2152, I believe, was the time that she actually encountered the vessel, or 2202. The case has been actually heard, had three administrative hearings, and been before Judge Woodlock twice. The situation we have here now is 16 years into the case, after the Coast Guard has relied on the accuracy of its radar systems. Post-hearing, the agency has determined that at least one of the Coast Guard Cutter radar positions taken at 2158 was inaccurate, could not have been the fishing vessel's settler, and therefore has found that the settler was in violation, notwithstanding the fact that there's a claim it was the only vessel in the area, the only vessel sighted by the Coast Guard Cutter, and thus could have been the only vessel responsible for certain radar contacts detected inside of Restricted Gear Area 1. Settler obviously disputes that. Settler is a 90-foot steel-hulled fishing trawler. At that time it was engaged in the monkfish fishery, which is a bottom trawl fishery towing a fairly soft net, not a roller net. It's kind of a chain net. It tows at a speed of about three knots to maximize time that the net is on the bottom. The captain states that he was fully aware of where the closed area was, and he towed in a southerly direction. According to the computations of settler's experts, had he... They still say that the other three are accurate. And the district court found that the evidence in total supported a reasonable finding that those were accurate and could be relied upon based upon not just the readings but the testimony of the Coast Guard officers, and they're comparing the visual sighting to those readings. I mean, the problem is this is a substantial evidence. I understand that, Your Honor, but let's back up and let's consider a couple of the points that you just brought up. First of all, on the night of October 16th or 17th, 1997,  and understood that where Captain Valenti claimed he set out his net was in the closed area and where they encountered the vessel was in the closed area. Three years later, they determined that that was not true, and for the first time attempted to show that radar contacts moving through the closed area were, in fact, the settler. Those radar contacts, which were not plotted on that night, they were plotted years later, are all ascribed to a number contact 8174. And at night on a vessel, when you see a boat and you see a radar contact, you can't assume that they are the same. You really have to correlate them. So Your Honor indicated that the crew said that they correlated the sightings of the moving vessel with the radar contacts, and they would have to do this because, supposedly, because they're closing on it at a high rate of speed. However, simple mathematics of plotting the positions of the radar contact relative to the course of the Spencer, which is supposedly heading straight for a target, tells you that the radar contact was actually moving in many different directions and on the wrong side of the cutter Spencer for about half of the encounter, which is directly contrary to the statements that all of the crew of the Spencer made, which was we had this contact and we kept him just off our bow as we closed on him, pointing at him because we did not want to get in front of him. They needed to go behind him. The radar contact, meanwhile, is moving off in other directions. And that's a mathematical computation, and I don't think that there was any question with regard to Frontier's expert. I did not try the case before the agency itself in the first round. But Frontier's expert, Mr. Ouellette, yes, who is a relative of mine, plotted it, and there's no question as to where the course of the Spencer versus the radar contact, and they do not correlate. The agency makes a number of statements that they were correlated using an alidade, and Coast Guard policy, according to Commander Diaz at the hearing before Judge Devine, was that if alidade readings are taken, they are recorded. There is no record of them. So there was no actual correlation. And the belief is that on the night that they encountered the settler, they believed, based on a first plot, and their first plot where Captain Valenti said he set out and where they encountered it, at all three locations, they believed that was enclosed in restricted gear area one. But the 2140 sighting where they recorded the contact with 8174, that was determined to be a half mile inside the RG zone. That's what they conclude, yes. And as I understand it, you have two principal criticisms of that. One is you say it might not have been your client's boat. It could have been high flyers or something else. Correct. And then secondly, you say the 2150 sighting and the 2158 sighting could not both be correct. It's impossible. It's impossible for them to have been the settler. Right. But as I understand the response, they actually agreed with you and found that the 2158 setting, because the boats were on reciprocal courses, was an inaccurate sighting. And so they distinguished the 2158 from the equation. But therein lies the problem, Your Honor. Our position is and has always been that restricted gear area one is a busy fishing area. It is closed because there are a large number of vessels all fishing with high flyers in that area, and they move constantly. Although the agency says there's no evidence that there were other vessels, in point of fact, the testimony was that area was closed because there were so many other vessels. But there's no hard evidence of any other vessel. And the idea, I mean, why shouldn't we defer to an expert agency here when they find it unconvincing that there could be another vessel there this whole time and it would always be masked? And also, as I understand it, didn't the captain testify that he could tell the difference between a high flyer and a vessel? So, Your Honor, then the question is what was the 2158 contact? It was a wrong reading because they were on a reciprocal course. But does that – we don't know where they were at 2140. Right. The agency never produced its header log from the 2140 position, which would have showed us exactly what the cutter was doing. We don't know the speed it was moving. We don't know where it was located. We don't know its aspect. Just on that point, to understand your argument before you finish with this, are you saying, put aside the 2158, say there was never even a 2158 reading of any kind, okay? Are you saying that with the plots they do have 2140 and the others, that's not substantial evidence? Actually, no, not when compiled with the other evidence that we have. Right, okay. So now I understand that, right, all of it. You could say, regardless of 2158, their just case is too weak here, given all the other points you're making. If we disagree with that, and if we thought, well, actually, setting aside 2158, the other points that they have on the evidence that we've got, we could uphold for substantial evidence. Just bear with me, right? I understand the argument that the other ones should be rejected, too. But if we accept them all, now we add in 2158 that the agency concedes was mistaken. What's your argument about why the addition of the erroneous 2158 plot suddenly deprives the agency of substantial evidence for their finding? Well, if we ignore the premise of the agency's case is there was one vote out there, one vote alone, and there's no evidence that there was anyone else. And now, if we have any extraneous plots that we can't say are you, we can reject them because they're inconsistent with our position that you're in violation, that you were there. So if I say I'm guilty because I'm the only one in the room, but I saw somebody sitting off to the side, but he couldn't have been there because you're the only one in the room, we have a tautology. There's no way you can win. And the difficulty that we have here is, first of all, if after the case is over, 16 years into the case, the agency suddenly takes a position, well, our stuff isn't all that accurate. It's exactly what they did in the first case before Judge Woodlock, when they said, well, our DGPS system isn't totally reliable, and since a settler was in the closed area because we've already concluded that, we have to reposition the Coast Guard cutter. I mean, it basically does the same thing. It conforms the evidence to a preconceived notion of guilt. This sounds like a really good factual argument that, if I was sitting as a member of the agency, would really capture my attention. But the trouble I'm having is, under the substantial evidence test, why can't I find that the fact-finding stands that, yeah, they changed their theory and, yeah, they fixed holes in it, but we're going to go along with it. It's not a change in the theory, because the entire premise of the case is the accuracy of the Coast Guard's radar systems. And when that system is both evidence of guilt and turns out, in fact, to exonerate the party, how can you post-hearing say, well, we're going to selectively accept that which proves guilt and reject that which exonerates? And how does it exonerate the party if you assume that there's a reason, peculiar to 2158, to regard the 2158 location as materially off? How do the readings then exonerate your client? Well, Your Honor, first of all, there's no evidence that the 2158 position is incorrect, except that it's inconsistent. But wait, I thought someone testified that you can, that the reliability of that particular finding was subject to challenge because of the reciprocal courses. No, that was a finding of the judge. In point of fact, the testimony of the expert was that the 2158 position, because it was closer in, would have had a much smaller margin of error and would have been more accurate. So you're saying there's no evidence in this record at all to support what you would call is an incorrect factual assertion by the judge that 2158 is subject to challenge? There is none, and in point of fact, he tried to contrast it to the 2140 position when the actual evidence as to what was occurring at 2140 has never been produced and was apparently deleted from the Coast Guard computer systems before the case began. I thought the administrative law judge had said that one of the reasons why we might think the 2158 was off was there was this reciprocal course claim, which I realized the expert challenges. But I thought another argument that was made is just at 2140 is when they first have a contact of illegal fishing. And then from that moment on, they shift from detecting the violation to the law enforcement exercise of trying to capture and stop the ship and that the likelihood of a misplotting or mistake or error is just higher once you've determined at 2140 they're guilty and now what we've got to do is get them to stop and desist. Well, there's lots going on in the ship. The ALJ says that in his conclusion. What basis would we have for discerning that that's not right? Well, first of all, Your Honor, and this is one of the big problems, it goes to the discovery issue that remained outstanding and the 2208 position that came out of a CIC combat information center document that the agency produced but then refused to consider. There were two sets of radar operators on that boat on the night, one in the CIC and one on the bridge. The only records that we've ever received from the CIC people and the reason that they're isolated is so that they can actually be divorced from what's going on in terms of the moment-to-moment navigation so they can monitor a situation and not have to worry about running down another boat. So we've never seen that but the one thing that we did see and it is consistent with Frontier's position that it wasn't the vessel in the closed area is that the 2158 position reports a course and speed going further into the closed area which brings it exactly to the 2208 plot that the agency presented as evidence to us. It was unfortunately overlooked by trial counsel below and not given to experts but as the affidavit and I believe it's actually in our appendix shows from Professor Ouellette, that 2158 target was moving more into restricted gear area one and heading for exactly where CIC detected a boat at 2208 about a mile away from where the settler was at that point alongside the Spencer. So the agency in addition to... Is this other 2208 plot is in the record or is not? The 2208 plot is in the record. Is it the other boat? Yes. And it is assigned the same contact number, 8174. So CIC was maintaining a plot. Now the agency at the hearing before Judge Devine objected to its introduction and Judge Devine said, well, it's not in 24-hour format so I don't think it's a Coast Guard record. Is this exhibit 15 that you're talking about or is this separate? It is, I believe it is Respondents Exhibit 15A and 15B. I thought that was at 1019. That's not 2208. It was 1019, 22, 10 or 22, I forget the exact time. We believe it's expressed in 12-hour format instead of 24-hour format. That's the 2219 plot. Right, correct. Okay, it's not that 2208. 22, I'm sorry, I'd have to look at it. It's shortly after the two vessels came alongside. I believe it is, whether it's 22, I apologize, Your Honor, I don't have the exact time. There is an affidavit in the appendix which fully spells out where it's 1019, 2219. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. Christina Wickers for the Secretary of Commerce and the Acting Administrator of NOAA, and with me today is Frank Spurtell, who is a NOAA attorney, who handled some of the administrative hearing below. The issue for the Court is whether substantial evidence supports the NOAA administrator's 2010 decision that the settler was fishing in the restricted area with mobile gear on October 16, 1997, at 2140 when the area was closed to mobile gear. As Judge Keada noted, that is a very deferential standard, substantial evidence. And this Court is required to give the administrator's decision the benefit of the doubt. In fact, the administrator's decision is supported by substantial evidence, and it is largely summarized by Judge Woodlock on pages 27 to 28 of his second opinion, which is also pages 27 to 28 of the addendum to the plaintiff's, to the appellant's brief. But basically what happened, Judge Barron, you summarized it exactly. The Coast Guard cutter was traveling eastward and had on board a lot of electronic equipment, not to mention a crew that was using its eyeballs, and the electronic equipment was largely redundant. There are two radars on board this large cutter that is almost the length of a football field, and the radar was set to 12 miles. You have both the, in addition to the two radars, you have the differential GPS and the Loran navigation system, both of which would tell the cutter where it was precisely in terms of latitude and longitude. In addition, using two radars and the Allidade, which is a telescope that gives the bearing as compared to True North, that's what you use to then determine where is this radar target that we have just pinged with radio waves. We see it on our radar. Of course, we don't have a GPS that tells us precisely where that target is. We have to figure out where it is. And the two radars and the Allidade both give bearing. In addition, you have the COMDAX system, which tells the course and the speed of this radar target that you have. So you've got the radars, you've got the Loran, you've got the GPS, you've got the Allidade, and then in addition you've got the crew using not just naked eyes but what they call big eyes, and these are binoculars that are the length of your arm. They're huge, and they can see a lot on them. So from the very first fix, as Judge Barron pointed out, from the first time that they got a radar ping that there was something that would appear to be in this restricted area that was 2140. Excuse me, that was earlier than that, but when they first plotted it, it was 2140. And what happens is the quartermaster, who is directed to plot, says, stand by your mark, and then he calls out mark. And when he says mark, if your honors have the appendix handy, the radar log, which is page 67 of the appendix, shows the data that is called out that the quartermaster then records. So he records the differential GPS position and the Loran lines. Loran lines can be converted to latitude and longitude. So the left side of the chart will tell us specifically at the times on the left, and there are seven times, specifically where is the Coast Guard cutter at those times. On the right, other members of the crew are calling out the fishing vessel bearing and range. That's the first column on the right-hand side. Bearing is in degrees true north, and range is in yards. And on the right-hand column, the course and the speed of the target. Course in terms of degrees true north and speed in terms of knots. And that comes out from the COMDAC system. So when he says mark, they call out that information, and the quartermaster records this. And he testified that he did prepare this log. He took the first point, 2140, and he plotted it. He took a pencil and he put down on a navigational chart, here it is. And he could see, and so the entire crew could see, that's inside the restricted area. That's all they need to know. At that point, let's say, they don't know what it is. They know there's a radar blip out there at 2140. They don't know if it is a fishing vessel, it could be legally transiting. If it's a trawler and it has its trawling net stowed on the boat, then that's legal. So what they need to do is they're traveling eastward, they turn to port, and they go zooming quickly over to this radar target to see is it a fishing boat, and if so, is it fishing illegally. So that's primarily what's on their mind. It is not, yes, they are taking this additional information, but the primary thing on their mind after nailing that 2140 radar and they see Quartermaster Coppola puts it on the chart and sees, yes, that's in the restricted area, is this a fishing vessel and are they illegally trawling. It looks like a fishing vessel. It doesn't look like a high flyer, which is just a radar reflector tied to a lobster buoy, because you can see that on the radar screen, both from the strength of the return of the radio waves and the fact that it's moving. It's a moving vessel. It's not a stationary high flyer. So they turn to port and they go tearing off over this. They're into their law enforcement function, as you said, Judge Barron, and they go tearing off to this radar blip. And now they're out there with these enormous big-eyed binoculars looking for it. They see the green over the white lights, which means a trawler fishing at night, and they spot him. And during all of these points, they are matching electronic data, which is largely redundant, with the visual correlations. And they see the settler and they do a turn around the settler. Now, my brother pointed out that the administrator found that one of these plots was erroneous. One of these radar fixes was erroneous, 2158. Yes, before you get to that, and that was a helpful explanation, but their position is that it's not that the boat wasn't in the area. Their position is that the boat was fishing outside of the restricted area and that the agency prematurely pegged the blame on them and ignored whatever boat was actually there and in violation. Right. That's their phantom vessel theory, that there was some other boat out there. And so I think they also point to the fact that the actual visual contact of their vessel occurred when it was outside of the area. So there was no actual visual spotting of them inside. Substantial evidence says otherwise, Your Honor. Substantial evidence, there was testimony and the data showing, first of all, their experts conceded that Quartermaster Coppola, who took down this data, accurately plotted something inside the restricted area. Their experts conceded that the navigational equipment on board the cutter was working properly. So there's no question about that. And all of the crew on the cutter who testified said that they saw the green over white lights. As soon as they saw the green over white lights, they maintained visual contact and it matched up with the electronic data. So they can say. Was there testimony that they saw the green over white inside the area? Yes. When they first spotted, when they first got the 2140, the first fix inside, the target, which, of course, at that time they didn't know was the settler, but the radar target was seven-tenths of a mile, actually more than the half mile that you said, Your Honor, seven-tenths of a mile inside the restricted area. That's far. That's not just a smidge inside. That is far inside the restricted area. And then soon after that, they saw the green over white lights and maintained visual contact the whole time. So at the point that they saw the green over white lights, their testimony before the agency was they were seeing green over white lights within the RGA. Well, of course, you don't know that the green over white lights are within the RGA because you don't, you're looking at a sea, so you don't know, you don't know that it's. Just to Judge Thompson's point, I understand they saw green over white lights, they saw no other ship. They had a plot of 2140, which they knew to be within RGA 1, but that's just slightly different than saying, if I'm understanding you right, we saw visually a ship that upon seeing it we understood was in RGA 1. I don't believe anybody testified we saw green over white lights on a ship that was inside RGA 1 because I don't think that's physically possible. I do believe, and I'll count on my client shaking his head if I'm wrong, that at the agency testimony was at the time that they saw green and white lights, it correlated with these numbers and they tracked it continuously. So, and there was no other ship that they saw. And the Coast Guard got, this is a big boat. They can see very far, including with these big eyes, these big eyed binoculars. They didn't see any other vessel in the area, and the argument, and there was no, the only person who testified from the fishing vessel was the Captain Valente, and he didn't testify about seeing any other vessel in the area. Where did this issue of the reciprocal courses of the boat affecting the accuracy of 2158 come from? Was there any testimony at all on that point? I'm not, I don't know if there was testimony or if it was just what the ALJ found. Yeah, that when you're, once the Coast Guard cutter turned to port and picked up speed, dramatic speed, like to 20 knots, going really fast, the errors involved in, because again, you've got the exact location of the cutter, because that's GPS and Loran. What you're really trying to gauge is what's the location of that thing out there on the great blue yonder, and you're doing that by taking bearings and watching it visually. And the ALJ and then the administrator found that errors in calculating the bearings, which is a mathematical issue, are going to be magnified when you're going at each other and one of you is going at tremendous speed, because the fishing vessel did not pick up speed. On what basis could we find that that's the type of thought or conclusion that an expert agency can reach on its own without anyone in the record having said, in other words, they could certainly say 2 plus 2 is not 5 on their own. I'm not sure how much quantum mechanics they do on their own. Where does this fall in between? I don't know the answer to that. I think that, and in one way, it's not, you don't have to reach that issue, because if we just accept that 2158, and let me point out one difference between my brother counsel and me. He's saying the agency has determined that 2158 was wrong because the radar, in his reply brief he says because the radar equipment on board the cutter wasn't working. Nobody found the radar equipment wasn't working. In fact, their expert said it was working. The question is, it's an anomalous reading, and in the hearing below, we, NOAA, argued that that reading was correct. But what the agency, what the ALJ said was, yeah, but it conflicts with the testimony of the commander on board the cutter. He said in terms of when he first saw late eyes on the nets on the fishing vessel, the angle of the turn and the speeds and so on, that fishing vessel couldn't get from 2158 over to this point in that amount of time. It would have to go a speed higher than that fishing vessel is capable of doing. They conflict. NOAA argued below, well, then the commander was wrong. And the ALJ said, tried to reconcile it too, and the administrator said, you just can't reconcile it. It's an anomalous reading. We just don't know what happened. As Judge Woodlock said, it's a bit of a mystery. Well, on that point, I guess there's three possibilities. There's the possibility that we could affirm you with the administrator having said, I have no idea what happened with 2158. And there would be a question whether that's good enough. There's a question whether we could affirm on the ground that the reason 2158 was wrong was because of the reciprocal course point, which we'd have to find some basis in the record to support that. Or I guess the third possibility is we could affirm on the ground that there was a finding by the administrator that they had moved into the law enforcement mode, and therefore there's perfectly reason to expect that 2140 would be good and the other ones might be less accurate. Which of those theories, or is it all of those theories that you're asking us to affirm? We are asking that you find that substantial evidence affirms the administrator's decision, which is her decision is it doesn't matter. It was an anomalous reading. We don't have to worry about why it was wrong. As long as 2140 was right, the phishing violation must stand. What if it was another boat? Well, that was their theory, and they argued that. But if we assume 2158 is right, then is it, and we accept the decision, if I understand it, there was some decision that the captain was not wrong. If we accept both those facts, does it not follow that there must have been another boat? Well, I think that's why Judge Woodlock sent it back the first time and said you can't have both, because that was their argument, that the commander was correct and that 2158 was correct. May I finish, Judge Shelton? Yes. But you can't have both. On the other hand, there was no evidence of another vessel. The radar was good to 12 miles. Visibility was clear. But if you can't have both, okay, if we accept that, then how could that problem be cured by saying I don't need to decide about either? Because the only point that's relevant is what happened at 2140. But then you've just wiped, erased, taken out and erased the 2158 off the record. That's true, because we don't know why it was wrong. Thank you, Your Honors. We're going to take a short break.